Joel M. Tantalo, SBN 206096
email: jtantalo@ta-llp.com
Michael S. Adler, SBN 190119
email: madler@ta-llp.com
**TANTALO & ADLER LLP**
1801 Century Park East, Suite 2400
Los Angeles, CA 90067-2326
Phone: (310) 734-8695
Fax: (310) 734-8696

Attorneys for plaintiff
Lucha Libre FMV, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LUCHA LIBRE FMV LLC**, a Delaware limited liability company,

Plaintiff,

vs.

**PROMOCIONES ANTONIO PEÑA, S.A. de C.V.**, a Mexican corporation,

Defendant.

**CASE NO.**

**COMPLAINT FOR:**

1. **BREACH OF WRITTEN CONTRACT**
2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING|**
3. **COPYRIGHT INFRINGEMENT**
4. **TRADEMARK INFRINGEMENT**
5. **UNFAIR COMPETITION**

*****DEMAND FOR JURY TRIAL*****

Plaintiff Lucha Libre FMV LLC ("**LL FMV**" or "**Plaintiff**"), for its Complaint against defendant Promociones Antonio Peña S.A. de C.V. ("**PAP**" or "**Defendant**"), alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff LL FMV owns all rights in and to the world famous Lucha Libre AAA Mexican masked luchador wrestling league and events (the "**Mexican Wrestling League**") throughout the world, except in Mexico. LL FMV owns the exclusive right to distribute any and all Mexican Wrestling League live events and entertainment content outside Mexico, the exclusive right to sell Mexican Wrestling League merchandise outside Mexico, and the exclusive right to otherwise exploit and monetize the Mexican Wrestling League anywhere outside Mexico.

2. Defendant PAP is well aware of LL FMV's exclusive rights, because PAP sold them to LL FMV pursuant to a 2014 intellectual property agreement.[1]

3. Under the IP Assignment, PAP retained ***only*** the right to distribute and otherwise exploit the Mexican Wrestling League in Mexico. It transferred all its rights in all other territories to LL FMV in 2014.

4. Nevertheless, PAP has brazenly breached the IP Assignment by purporting to license to others, without LL FMV's consent, rights to air Mexican Wrestling League content and sell Mexican Wrestling League merchandise throughout the world.

5. FactoryMade Ventures, LLC ("**FactoryMade**"), one of the members of LL FMV, first learned about PAP's misconduct last year, when it discovered during diligence for a potential sale of the company that PAP had licensed non-Mexican distribution rights to Facebook, Turner International, Pluto TV, and Twitch.

[1] A true and correct copy of the original January 11, 2014 Intellectual Property Assignment Agreement is attached hereto as Exhibit 1 and incorporated herein by reference. A true and correct copy of the January 20, 2015 Amendment to the IP Assignment is attached hereto as Exhibit 2 and incorporated herein by reference. Collectively, the initial agreement and the amendment are referred to herein as the "**IP Assignment**".

FactoryMade's discovery immediately led to a dispute between FactoryMade, PAP and Dorian Roldán ("**Roldán**") – the nephew of PAP founder Antonio Peña and son of PAP majority owner and chief executive Maricela Peña ("**Peña**") who simultaneously served as both PAP operations manager and manager of LL FMV. That dispute quickly led to settlement discussions between the parties including a January 2020 mediation.

6. Although the parties were unable to resolve their differences at the mediation, settlement discussions continued. However, unbeknownst to FactoryMade, Maricela Peña and Dorian Roldán were surreptitiously negotiating, and ultimately caused PAP to enter into, yet another unauthorized deal – this time with Marvel, the world-famous comic book company-turned-media empire that is now owned by The Walt Disney Company.

7. Neither Peña nor Roldán has provided LL FMV with a copy of PAP's contract with Marvel, much less disclosed any of the financial details of that arrangement. But on October 26, 2020, PAP and Marvel issued a joint press release concerning a collaboration between them. According to the press release:

> Marvel and AAA get together to expand the sporting and cultural experience of Mexican wrestling. As part of the actions that will be taken for this collaboration, a new group of wrestlers inspired by Marvel's most iconic Super Heroes and villains will be introduced; and a series of family events that will gather the perfect combination of sports, culture and entertainment that distinguishes wrestling in Mexico will be developed.
>
> "This collaboration with AAA represents an opportunity to participate in an iconic part of Mexican culture, such as wrestling and offering attractive content and experiences to the whole family that can be further celebrated with spectacular consumer products inspired by this discipline which is valuable for fans and consumers; says Luis Lomeli, Head of Licensing and Consumer Products area at The Walt Disney Company (Mexico). "While developing these storytelling and content creation initiatives, the premise has been to stay true to the essence of Mexican wrestling at all times by bringing together AAA's experience in terms of wrestling and Marvel's experience in terms of story and character

> development. The potential of wrestling is unlimited. Its quality, color and talent are increasingly valued in the world. Based on this unique and original creative platform, we will develop different product lines such as clothing, footwear and accessories, toys, household and school items", adds the executive.
>
> During autumn of this year, the first 4 wrestlers of this group will be announced, who will be called to revolutionize the AAA lineup. On the one hand, we will have the technical wrestlers: Aracno and Leyenda Americana and, on the other hand, we will have the tough wrestlers: Terror Purpura and Venenoide.
>
> It will be at the next AAA event, Triplemania XXVIII. to be held on December at the Arena Ciudad de Mexico, in Mexico City, when the public will be able to watch them live and appreciate the moves, holds, counter offenses and evolution of these wrestlers inspired by their beloved Marvel Super Heroes and villains.
>
> "Teaming with Marvel represents the union of two fantastic worlds that house characters that public have turned into their great heroes. Therefore, it will be a pleasure to welcome you to the Lucha Libre AAA Worldwide family in a successful event, such as Triplemania XXVIII," concluded Dorian Roldán, General Director of Lucha Libre AAA.[2]

8. PAP's deal with Marvel clearly infringes on LL FMV's exclusive international rights. Under the IP Assignment, LL FMV owns the rights to both all existing and future Mexican Wrestling League characters (except in Mexico). Marvel and PAP are promoting their collaboration worldwide on Facebook, Twitter, Instagram, and other social media services, so that viewers throughout the world can see their new characters in action at the Mexican Wrestling League's annual tentpole event – Triplemania. PAP recently announced that this year's Triplemania will be held behind

[2] The press release, which can be found online at https://www.marvel.com/articles/culture-lifestyle/marvel-lucha-libre-edition-aaa, is attached hereto as Exhibit 3.

closed doors at the Arena Ciudad in Mexico City on Saturday, December 12th, and is actively promoting a free, worldwide, livestream broadcast of the event on YouTube and Facebook Live.[3] Marvel is also selling merchandise – called the "Marvel Lucha Libre Edition" – throughout the world.[4]

9. PAP's blatant breach of its IP Assignment to LL FMV is not merely a breach of contract (although it is that as well). By entering into the aforementioned deals, PAP has also directly infringed LL FMV's copyrights and registered trademarks while inducing Marvel, YouTube, Facebook, Turner International, Pluto TV, and Twitch (the "**Third Party Licensees**") to do the same.

10. LL FMV therefore files this action to enjoin further infringement of the exclusive intellectual property rights it purchased from PAP, and to secure a money judgment for millions of dollars that PAP has stolen from LL FMV by purportedly "selling" rights to the likes of Marvel, Facebook, Turner International, Pluto TV, and Twitch, which PAP had no right to sell.

**THE PARTIES**

11. Plaintiff Lucha Libre FMV, LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.

12. Defendant Promociones Antonio Peña S.A. de C.V. is a Mexican corporation with its principal place of business in Mexico.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over LL FMV's federal law claims pursuant to 15 U.S.C. § 1121; 17 U.S.C. § 1203; and 28 U.S.C. §§ 1331 &

---

3 The PAP promotional announcement, which can be found online at http://www.luchalibreaaa.com/triplemania-xxviii-en-vivo-por-facebook-live-y-youtube/, is attached hereto as Exhibit 4.

4 The product launch announcement, which can be found online at https://www.marvel.com/articles/culture-lifestyle/marvel-lucha-libre-edition-aaa, is attached hereto as Exhibit 5.

§ 1338. This Court also has supplemental jurisdiction over the pendant state law claims pursuant to 28 U.S.C. §§ 1338(b) & 1367.

14. This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because PAP (a Mexican corporation) is diverse in citizenship from LL FMV (a Delaware limited liability company), and the amount in controversy exceeds $75,000 exclusive of interest and costs.

15. This Court has personal jurisdiction over PAP, which is subject to both specific and general jurisdiction in this District. Among other things, LL FMV is located in Los Angeles; PAP did business with LL FMV in Los Angeles where LL FMV is headquartered; PAP entered into transactions with Marvel and others in Los Angeles; and LL FMV suffered the harm described herein in Los Angeles.

16. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this District.

## FACTS COMMON TO ALL CLAIMS

### A. Marisela Peña, Dorian Roldán & The Mexican Wrestling League

17. This action ultimately centers around the Mexican Wrestling League.

18. Peña's brother, Antonio, founded the Mexican Wrestling League about 30 years ago. His family now owns the league through their company, PAP.

19. PAP produces the live Mexican Wrestling League match events and at one time owned and controlled all its associated intellectual property rights.

20. PAP is a family business led by the family matriarch, majority owner, and chief executive Peña.

21. Peña's son, Roldán, manages its day-to-day operations.

### B. PAP Formed Lucha Libre AAA To Manage And Monetize PAP's Intellectual Property

22. Lucha Libre AAA is a United States entity that Peña and Roldán initially formed to exploit PAP's intellectual property rights (via a master license from PAP).

23. Alex Garcia and Antonio Cué are outside investors in, and co-owners of,

Lucha Libre AAA.

**C. Lucha Libre AAA And FactoryMade Join Forces To Take The Mexican Wrestling League Worldwide**

24. In February 2013, Lucha Libre AAA and FactoryMade formed LL FMV[5] to maximize and exploit the value of the Mexican Wrestling League beyond Mexico. The plan was to leverage each of their respective members' unique backgrounds, networks, and resources to expand the league's international fanbase and exponentially grow its worldwide revenue.

25. FactoryMade is a boutique entertainment and media industry business development and consulting firm founded ten years ago by former William Morris Endeavor agents John Fogelman and Cristina Patwa. Among FactoryMade's most prominent successes was the El Rey cable network, a Hispanic-focused cable network.

26. Alex Garcia is an acclaimed international film, television, and music producer

27. Antonio Cué is the former President and co-owner of the Chivas USA Major League Soccer franchise with considerable international sports and entertainment industry experience and networks.

28. Leveraging their vast industry experience and their incredibly talented and innovative creative network, LL FMV developed and produced *Lucha Underground*, a television series based on the Mexican Wrestling League that, for years, was the highest rated program on El Rey. Through deals with Netflix and others, Lucha Underground is streamed around the world.

29. In addition to their tireless efforts to grow the business, FactoryMade, Garcia, and Cué made significant financial contributions and secured financial commitments that generated about **$47.5 million** in funding for the production and

---

[5] Fogelman initially served as the manager of LL FMV. Roldán succeeded him in October 2016 until recently. Fogelman was recently reinstated and currently serves as LL FMV's manager.

marketing of *Lucha Underground* and exploitation of the worldwide rights to the Mexican Wrestling League.

**D. PAP Transfers All Its Mexican Wrestling League Intellectual Property To LL FMV, Except In Mexico**

30. At first, LL FMV derived its rights to exploit the Mexican Wrestling League (including without limitation *Lucha Underground*) via a sublicense from Lucha Libre AAA.

31. But in 2014, once LL FMV achieved certain contractual milestones to proceed with the venture on a long-term basis, both the PAP master license to Lucha Libre AAA and the Lucha Libre AAA license to LL FMV were terminated.

32. In their place, PAP directly transferred and assigned all its intellectual property rights in and to the Mexican Wrestling League – both those rights already in existence, and any that might be created in the future – to LL FMV. The only exception was that PAP retained ownership of those rights for exploitation in Mexico, alone. In other words, by virtue of the IP Assignment, LL FMV is the owner of all non-Mexican intellectual property rights in the Mexican Wrestling League.

33. Specifically, the IP Assignment provides that:

> Effective as of the date hereof, solely with respect to [the world, excluding only Mexico] and subject to the reversion right set forth in Article VII, below, [PAP] hereby irrevocably assigns, conveys and otherwise transfers to [LL FMV] all right, title and interest in and to the Assigned IP[6].

---

[6] The term "Assigned IP" is defined as "the Intellectual Property, proprietary and other rights used, owned or controlled by Assignor in connection with Lucha Libre AAA, including without limitation the Characters and other Intellectual Property set forth on Schedule A hereto. For the avoidance of doubt, Assigned IP shall also include any Intellectual Property created by Assignor after the Effective Date but assigned to Assignee pursuant to Section 4.2, below." In turn, the term "Intellectual Property" is defined as all (i) copyrights (including all registrations, renewals, extensions and other applications therefor) and copyrightable works, including audio, visual, graphic,

[Footnote continued on next page]

34. This transaction was documented in the aforementioned IP Assignment. Pursuant to that transaction, PAP's Mexican Wrestling League copyright and trademark registrations were assigned to LL FMV. The assignments included 117 copyrights for Mexican Wrestling Characters[7] and 16 registered trademarks including the primary designations "AAA" and "LLL MEXICO".[8] Copies of the assignments are attached to the IP Assignment (Exhibit 1) and were recorded with the United States Copyright and Patent & Trademark offices.

35. In January 2015, the parties amended the IP Assignment. Among other

---

musical, choreographic and literary elements (such as images, characters, characterizations, settings, venues, accessories, costumes, masks, designs, graphics, artworks, musical compositions, orchestrations, master recordings and other characteristics associated therewith or embodied therein, in each case to the extent so copyrightable), (ii) trademarks, service marks, trade names, logos, slogans, designs, branding, trade dress, and general intangibles of like nature, as each may be modified from time to time, together with all goodwill, applications, registrations, renewals and extensions related to the foregoing, (iii) domain names, (iv) patent rights, inventions, and patent and industrial design registrations or applications (including any continuations, divisionals, continuations-in-part, renewals, reissues and applications for any of the foregoing), (v) confidential information, knowhow, trade secrets, proprietary software, proprietary processes, formulae, algorithms, models, technical and engineering data, and proprietary design plans, diagrams, schematics and methodologies, (vi) any other property or rights commonly considered to be intellectual property, whether registered or unregistered, and (vii) any other work product comprising the foregoing."

[7] After the initial assignment of PAP's 117 copyrighted works, LL FMV registered an additional 167 works, including *Lucha Underground* episodes, new characters, and costumes. Collectively, these works are referred to herein as the "**Copyrighted Works**". A list of the Copyrighted Works is attached hereto as Exhibit 6 and incorporated herein by reference.

[8] After the initial assignment of PAP's 16 registered trademarks, LL FMV secured registrations for an additional 24 marks (and has applied for two others). Collectively, the registered trademarks are referred to herein as the "**Registered Trademarks**". A list of the Registered Trademarks (plus the two applications that have not yet proceeded to registration) is attached hereto as Exhibit 7 and incorporated herein by reference.

things, the parties affirmed that "[LL FMV] has the right to act as sales agent or distributor in connection with the exploitation of [Mexican Wrestling League content created by or for PAP that is initially exhibited in Mexico] worldwide excluding Mexico; the proceeds of any such exploitation by Assignee, whether in the form of a sales agent commission, distribution fee or otherwise."

36. LL FMV has paid PAP at least $700,000 to date, pursuant to the terms of the IP Assignment.

**E. Despite Its Assignment To LL FMV, Peña and Roldán Secretly Cause PAP To Enter Into Purported International Distribution Agreements With Others**

37. During due diligence for a potential sale of LL FMV, FactoryMade discovered that Peña and Roldán had, behind LL FMV's back, negotiated for PAP to enter into putative license agreements for the distribution of Mexican Wrestling League events and associated content outside Mexico – rights that PAP expressly assigned to, and which are owned exclusively by, LL FMV.

38. In particular, FactoryMade discovered that Roldán had caused PAP to enter into the following purported agreements:

- A putative worldwide distribution agreement with Twitch, an online streaming service, providing for a $650,000 minimum guarantee against a revenue share.
- A putative worldwide distribution agreement with Facebook Live, another online streaming service, providing for a $500,000 minimum guarantee against a revenue share.
- A putative license agreement with Turner International for linear broadcast and authenticated video-on-demand in the United States and throughout Latin America, for a license fee of nearly $300,000.
- A putative worldwide license agreement with Pluto TV, another internet streaming service, in the United States territory providing for a $250,000 minimum guarantee against a revenue share.

39. When confronted with these purported deals, Roldán did not dispute their existence or their terms. Nor could he. Instead, Roldán absurdly argued that despite the deals' international scope, only a small percentage of their value (if any) was allocable to non-Mexican territories.

40. While the parties attempted to work out their differences with respect to those deals (or so FactoryMade, Garcia, and Cué thought), Peña and Roldán were quietly at it again. This time, they negotiated the recently announced deal with Marvel to exploit existing and to-be-developed Mexican Wrestling League content, characters, and merchandise outside PAP's lone territory, Mexico.

41. FactoryMade has also learned that PAP is distributing its events on YouTube, in exchange for which it receives a share of YouTube's associated ad revenue. Despite using YouTube to broadcast Mexican Wrestling League content outside Mexico, PAP has never disclosed its arrangement with YouTube to LL FMV, much less accounted to LL FMV for its share of the worldwide ad revenue.

**F. PAP Seeks To Unilaterally Settle The Dispute, But In Doing So It Merely Admits Its Own, Blatant, Misconduct**

42. On October 28, 2020, Roldán resigned as manager of LL FMV. A week later, unsolicited, he sent LL FMV a "Promissory Note" on behalf of PAP in the amount of $391,719 payable over five years.

43. On November 9, 2020, Roldán wrote that the Promissory Note was for LL FMV's share in the license fee revenue from Facebook, Turner International, Pluto TV, and Twitch through 2019 (the same amount he previously – and likewise implausibly – claimed was due only through 2018).

44. On November 13, 2020, PAP wired $31,719 to LL FMV, the "first installment payment" on the Promissory Note that Roldán unilaterally prepared.

45. Peña and Roldán seem to think they can unilaterally set the terms of a settlement between PAP and LL FMV over the unauthorized deals. Obviously, they cannot. LL FMV did not request the Promissory Note and did not agree to settle its

claims against PAP for the terms set forth in that document. PAP concedes that through June 30, 2019 it has secured more than $2.5 million in license fee revenue from the Third Part Licensees alone – and even that information is 18 months old and excludes any revenue from YouTube.

46. Although they do not and cannot constitute a settlement, PAP's actions constitute a glaring admission that it has breached the IP Assignment, infringed the Copyrighted Works and Registered Trademarks, and caused LL FMV millions of dollars in financial harm.

**FIRST CLAIM FOR RELIEF**

**BREACH OF WRITTEN CONTRACT**

47. LL FMV incorporates and re-alleges each of the allegations above, as if set forth fully below.

48. LL FMV and PAP entered into a valid and binding agreement, the IP Assignment.

49. PAP has breached and is breaching the IP Assignment by, among other things, distributing Mexican Wrestling League content outside Mexico, putatively licensing the right to distribute Mexican Wrestling League content outside Mexico, and putatively licensing to others the right to create new Mexican Wrestling League content and merchandise for exploitation outside Mexico.

50. LL FMV did all or substantially all the significant things that the IP Assignment required it to do, except for those promises that it is excused from doing.

51. As a direct and proximate result of PAP's breach of the IP Assignment, LL FMV has suffered millions of dollars in financial harm.

52. In addition, PAP's actions have caused, and unless enjoined will continue to cause, severe, immediate, and irreparable injury for which LL FMV has no adequate remedy at law. Pursuant to Section 9.1 of the IP Assignment, PAP expressly agreed that LL FMV is entitled to injunctive relief and/or specific enforcement. Therefore, LL FMV is also entitled to a temporary restraining order, preliminary injunction, and

permanent injunction.

53. Pursuant to Section 9.1 of the IP Assignment, LL FMV is also entitled to an award of its reasonable attorneys' fees and costs incurred herein.

## SECOND CLAIM FOR RELIEF

## BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

54. LL FMV incorporates and re-alleges each of the allegations above, as if set forth fully below.

55. LL FMV and PAP entered into a valid and binding agreement, the IP Assignment.

56. As a matter of California law, in every contract there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive its benefits of the contract. Good faith means honesty of purpose without any intention to mislead or take advantage of the other. It means being faithful to one's duty or obligation.

57. PAP, by and through Peña and Roldán, has not acted fairly or in good faith. Instead, it has prevented LL FMV from receiving its benefits under the contract.

58. LL FMV did all or substantially all the significant things that the IP Assignment required it to do, except for those promises that it is excused from doing.

59. As a direct and proximate result of PAP's breach of the implied covenant of good faith and fair dealing, LL FMV has suffered millions of dollars in financial harm.

60. In addition, PAP's actions have caused, and unless enjoined will continue to cause, severe, immediate, and irreparable injury for which LL FMV has no adequate remedy at law. Pursuant to Section 9.1 of the IP Assignment, PAP expressly agreed that LL FMV is entitled to injunctive relief and/or specific enforcement. Therefore, LL FMV is also entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

**61.** Pursuant to Section 9.1 of the IP Assignment, LL FMV is also entitled to

an award of its reasonable attorneys' fees and costs incurred herein.

**THIRD CLAIM FOR RELIEF**

**COPYRIGHT INFRINGEMENT**

**17 U.S.C. § 106, 502, 504, 505**

62. LL FMV incorporates and re-alleges each of the allegations above, as if set forth fully below.

63. LL FMV is the sole owner of the Copyrighted Works outside Mexico.

64. Nevertheless, PAP is distributing the copyrighted works outside Mexico, putatively licensing the copyrighted works to others for distribution outside Mexico, putatively licensing to others the right to create derivative works for exploitation outside Mexico, and otherwise exploiting or licensing for exploitation the copyrighted works and/or derivative works outside Mexico.

65. PAP intentionally entered into the infringing deals knowing that LL FMV owned the international rights.

66. PAP has received more than $2.5 million from the Third-Party Licensees. PAP has likely generated even more in international revenue than it has disclosed, as that number is only through June 30, 2019 and excludes any revenue received from YouTube.

67. LL FMV is entitled to its actual damages, PAP's profits attributable to the infringing deals, statutory damages (including heightened statutory damages for willful infringement), and recovery of its reasonable attorneys' fees and costs incurred herein.

68. In addition, PAP's actions have caused, and unless enjoined will continue to cause, severe, immediate, and irreparable injury for which LL FMV has no adequate remedy at law. Therefore, LL FMV is also entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

**FOURTH CLAIM FOR RELIEF**

**TRADEMARK INFRINGEMENT**

**15 USC §§ 1114, 1116, 1117, 1125**

69. LL FMV incorporates and re-alleges each of the allegations above, as if set forth fully below.

70. LL FMV is the sole owner of the Registered Trademarks outside Mexico.

71. Nevertheless, PAP is using the Registered Trademarks in commerce outside Mexico, and purporting to license to third parties the right to use the Registered Trademarks in commerce outside Mexico (thereby inducing them to infringe the Registered Trademarks), without LL FMV's authorization or consent.

72. PAP has willfully used the Registered Trademarks in commerce outside Mexico and entered into the infringing deals with third parties to use the Registered Trademarks in commerce outside Mexico, knowing that LL FMV exclusively owned the international rights.

73. PAP has received sizable license fees from the Third-Party Licensees, among others. PAP admitted that it received more than $2.5 million from the Third-Party Licensees through June 30, 2019. PAP has actually generated even more in international revenue than it has disclosed, as it has continued to do so since June 30, 2019 and its accountings do not even include revenues received from YouTube.

74. LL FMV is entitled to its actual damages, PAP's profits attributable to the infringing transactions, statutory damages (including heightened statutory damages for willful infringement), and recovery of its reasonable attorneys' fees and costs incurred herein.

75. In addition, PAP's actions have caused, and unless enjoined will continue to cause, severe, immediate, and irreparable injury for which LL FMV has no adequate remedy at law. Therefore, LL FMV is also entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

**FIFTH CLAIM FOR RELIEF**

**UNFAIR COMPETITION**

**CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200**

76. LL FMV incorporates and re-alleges each of the allegations above, as if set forth fully below.

77. PAP's misconduct constitutes a business act or practice that is unfair, unlawful, and/or fraudulent and, therefore, constitutes unfair competition within the meaning of California Business & Professions Code § 17200, *et seq*. In particular:

a. PAP's conduct is "unlawful" because it violates multiple state and federal laws, including without limitation copyright and trademark infringement.

b. PAP's conduct is "unfair" because the harm to LL FMV outweighed its benefits.

c. PAP's conduct is "fraudulent" because it fraudulently misrepresented to the Third-Party Licensees, or concealed, that it did not own the rights it purported to license to them.

78. LL FMV is entitled to full restitution of any funds or other benefits PAP improperly acquired from or on behalf of LL FMV.

79. In addition, PAP's actions have caused, and unless enjoined will continue to cause, severe, immediate, and irreparable injury for which LL FMV has no adequate remedy at law. Therefore, LL FMV is also entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

**PRAYER FOR RELIEF**

**WHEREFORE**, LL FMV prays for judgment in its favor and against PAP as follows:

1. For a temporary restraining order, preliminary injunction, and permanent injunction enjoining PAP, and all its putative licensees, transferees, and assigns, and each of their respective agents, servants, employees, officers, and attorneys, and all other persons in active concert or participation with them, from directly or indirectly

infringing on the Copyrighted Works or the Registered Trademarks, including without limitation:

a. Distributing, broadcasting, delivering, or otherwise making live Mexican Wrestling League events or Mexican Wrestling League entertainment content available for viewing outside Mexico;

b. Selling Mexican Wrestling League merchandise outside Mexico;

c. Otherwise using or exploiting the Copyrighted Works or the Registered Trademarks outside Mexico.

2. For an Order requiring PAP to account to LL FMV for all revenues and profits generated from the acts complained of herein;

3. For an award of damages, subject to proof at trial, including PAP's profits derived by reason of said acts or as determined by said accounting;

4. For an award of exemplary, punitive, or multiplied damages, to the extent permitted by applicable law;

5. For recovery of LL FMV's costs of this lawsuit, including its reasonable attorneys' fees and expenses to the extent permitted by applicable law;

6. For pre-judgment and post-judgment interest, at the rate and to the extent permitted by applicable law; and

7. For such other and further relief as the Court may deem just.

DATED: December 8, 2020 **TANTALO & ADLER LLP**

By: Joel M. Tantalo
Joel M. Tantalo

Attorneys for plaintiff Lucha Libre FMV, LLC

**DEMAND FOR JURY TRIAL**

LL FMV demands a jury trial on all claims, defenses, and issues so triable.

DATED: December 8, 2020 **TANTALO & ADLER LLP**

By: /s/ Joel M. Tantalo
Joel M. Tantalo
Attorneys for plaintiff Lucha Libre FMV, LLC